# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE OLIVER CHAVEZ, III | 1:09-cv-01624-OWW-SMS (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| ANTHONY HEDGPETH, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Following a jury trial in the Fresno County Superior Court, Petitioner was convicted of attempted murder (Cal. Penal Code[1] § 664/187) and assault with a firearm (§ 245(a)(2)). (CT 141-145.) The jury also found that Petitioner personally and intentionally discharged a firearm causing great bodily injury or death, within the meaning of section 12022.53(d). (CT 141-145.) Petitioner was sentenced to thirty-two years to life. (CT 157-162.)

Petitioner filed a timely notice of appeal. On October 6, 2008, the California Court of Appeal, Fifth Appellate District affirmed the judgment. (Lodged Doc. No. 3.)

Petitioner filed a petition for review in the California Supreme Court. The petition was denied on December 10, 2008. (Lodged Doc. No. 5.)

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

1

Petitioner filed the instant federal petition for writ of habeas corpus on September 15, 2009. Respondent filed an answer to the petition on December 28, 2009. (Court Doc. 16.) Petitioner did not file a traverse.

STATEMENT OF FACTS[2]

On September 18, 2006, Catarina Rodriguez was living in Fresno with her children and a friend, Nicholas Ray Padilla, whom she considered her "nephew." That evening at about 8:00 p.m., she heard a car in front of the house honking its horn, assumed it was one of her friends, and asked Padilla to go outside and instruct the friend to come inside the house. Rodriguez, who was busy braiding a daughter's hair, saw Padilla go outside, and then, without having heard any loud arguments, heard multiple gunshots. Rodriguez threw her daughter on the floor and covered the child with her body, and then heard Padilla say "I'm hurt" and "I'm hit." Rodriguez ran out, saw Padilla had been shot and then ran across the street to a pay phone to call 911.

However, before Rodriguez could even call for help, she saw a police officer arrive around the corner. Rodriguez testified that the police, within the hour, searched her house for firearms and weapons but found none. She further testified that she had never had a gun in her house and that she did not see Padilla with a gun that evening.

Fresno Police Officer Juan Gurrola was on patrol with his partner, Officer Monty Lewis, that night in the area when he heard multiple gunshots at approximately 8:00 p.m. He arrived at the Rodriguez house within two minutes of hearing the shots and was met by Rodriguez, who told him that her nephew had been shot. Gurrola found Padilla near the front porch, shot in several different parts of his body and bleeding profusely; the officer applied pressure to Padilla's shoulder wound to stop the bleeding until medical help could arrive. After helping Padilla, Gurrola obtained a preliminary statement from Padilla, which he relayed to his sergeant and to Fresno Police Detective Art Rodriguez. Gurrola also accompanied Padilla to the hospital. Later that night, Gurrola proceeded with several officers to Chavez's residence where he took Chavez into custody. The crime scene was searched and no weapons were found; however, the police did find an empty ammunition casing, a bullet fragment, and a bullet hole in the side of the residence.

Padilla testified that on the evening of September 18, 2006, he was preparing to eat dinner when he heard honking in front of the house, went outside, and approached the car making the noises. Padilla had recently made the acquaintance of a female named Angelica who was the mother of Chavez's baby. Chavez had then spoken to Padilla on the telephone a few days earlier and had threatened him because of his contact with Angelica and the pair had agreed to what Padilla believed would be a fistfight at some later date. When Padilla went outside, he saw Chavez was the driver of the car; Chavez then asked him if he "was ready." Padilla, who interpreted the comment as wanting to initiate a fistfight, indicated he needed to go into the house to put on his shoes and then went inside the residence.

---

[2] The Court finds the Court of Appeal correctly summarized the facts in its October 6, 2008 opinion. Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

2

When Padilla emerged from the house, he was wearing shoes and carrying a pair of gloves. As he was walking towards the car, he saw Chavez's arm emerge outside the window, saw some flashes, and then heard gunshots.

Padilla, shot multiple times, then managed to stumble back to the house in extreme pain while yelling for help. As a result of his injuries, Padilla has a steel rod in his leg and can no longer run, crawl, climb or do anything athletic.

Fresno Police Detective Art Rodriguez interviewed Padilla that night at the hospital; Padilla readily identified Chavez as his assailant. Rodriguez later interviewed Chavez at the Fresno Police Department headquarters. Chavez was informed of and then waived his constitutional rights. Initially, Chavez denied being armed and denied being involved in the shooting. As the interview progressed, however, Chavez then recanted his earlier denial and admitted shooting Padilla. However, in this version of his statement, Chavez claimed that after Padilla approached him, because he feared for his own safety, he had fired his gun several times. During this conversation, Chavez may have told Rodriguez that, in a telephone conversation prior to the incident, Padilla had threatened to shoot him. Detective Rodriguez told Chavez that he felt that Chavez was being dishonest. He lied to Chavez and told Chavez that Padilla had submitted to a gun residue test which came back negative, indicating that Padilla was not armed with a gun. After Detective Rodriguez expressed his doubts about the story, Chavez then indicated that maybe Padilla was unarmed and was possibly holding a pair of gloves in his hands. Chavez then admitted he had shot Padilla because Padilla was talking to or dating his baby's mother, which "made him angry."

**Defense**

Chavez did not testify and no defense witnesses were called.

(Lodged Doc. No. 3, Opinion at 3-5.)

## DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.      Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams (Terry) v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id., quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (*per curiam*). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court

4

and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, where the state court decided an issue on the merits but provided no reasoned decision, courts conduct "an independent review of the record . . . to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

C. Instructional Error

Petitioner contends that the jury was improperly instructed with CALCRIM 3.58 because it was applied to his exculpatory oral statements.

1. Procedural Bar

In denying the instant claim, the state court specifically stated:

> Chavez could have requested a modification to CALCRIM No. 358 that the cautionary language should apply only to specific statements, but did not do so. Instead, Chavez did not object to CALCRIM No. 358 as given, and also relied on it in his final argument. (RT 191-192.) As such, it is forfeited on appeal unless the error affected Chavez's substantial rights. (§ 1259.)
>
> As Petitioner did not object to the wording of the jury instruction, the state court clearly determined that the issue was forfeited. Because this state procedural requirement is clear, consistently applied, and well-established, Petitioner is barred from relief on habeas review.

(Lodged Doc. No. 3, Opinion at 6.)

A federal court will not review a petitioner's claims if the state court has denied relief of those claims pursuant to a state law that is independent of federal law and adequate to support the judgment. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30 (1989); See also, Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935). A state court's

5

refusal to hear the merits of a claim because of petitioner's failure to follow a state procedural rule is considered a denial of relief on independent and adequate state grounds. Harris v. Reed, 489 U.S. 255, 260-61 (1989). This doctrine of procedural default is based on the concerns of comity and federalism. Coleman, 501 U.S. at 730-32.

There are limitations as to when a federal court should invoke procedural default and refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). For California Supreme Court decisions, this means the Court must specifically have stated that it denied relief on a procedural ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1993); Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1991). If the California Supreme Court denies a petitioner's claims without any comment or citation, the federal court must consider that it is a decision on the merits. Hunter v. Aispuro, 982 F.2d at 347-48.

In addition, a federal court may only impose a procedural bar on claims if the procedural rule that the state used to deny relief is "firmly established and regularly followed." O'Dell v. Thompson, 502 U.S. 995, 998 (1991) (statement of Blackmun joined by Stevens and O'Connor respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-24 (1991); James v. Kentucky, 466 U.S. 341, 348-51 (1984). The state procedural rule used must be clear, consistently applied, and well-established at the time of the petitioner's purported default. Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96 F.3d 112, 129 (9th Cir. 1996), *cert. denied,* 117 S.Ct. 1569.

In this case, the appellate court refused to consider this claim pursuant to California's contemporaneous objection rule, because Petitioner failed to request a modification to CALCRIM 358. As noted by Respondent, California's contemporaneous objection rule is consistently applied independent of federal law. Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir.2002); Vansickel v. White, 166 F.3d 953, 957 (9th Cir.1999). Therefore, Petitioner is procedurally barred from bringing this claim.

2. <u>State Court Ruling</u>

In any event, the state court independently denied the claim on the merits, stating as follows:

> Chavez had been interviewed by Fresno Police Detective Art Rodriguez after Padilla had identified Chavez as the shooter. During this interview, Chavez told the officer that he had shot Padilla because he was afraid that Padilla was armed and would shoot him. As the interview progressed, however, Chavez indicated that Padilla was not armed and admitted shooting Padilla. At trial, these extrajudicial statements were admitted into evidence by the prosecution. As a result, the jury was instructed on CALCRIM No. 358.
>
> CALCRIM 358 was given to the jury as follows:
>
> "You have heard evidence the defendant made oral statements before the trial. You must decide whether or not the defendant made any of these statements, in whole or in part. If you decide that the defendant made such statements consider those statements along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give such statements. You must consider with caution evidence of a defendant's oral statements unless it was written or otherwise recorded."
>
> CALCRIM No. 358, as well as its predecessor instruction, CALJIC No. 2.71, is required to be given sua sponte in every case wherein an admission is used to prove the prosecution's case. (*People v. Carpenter* (1997) 15 Cal.4th 312, 392-393, superseded on other grounds by statute as stated in Verdin v. Superior Court (2008) 43 Cal.4th 1096, 1106.) "The purpose of the cautionary instruction is to assist the jury in determining if the statement was in fact made." (*People v. Beagle* (1972) 6 Cal.3d 441, 456[.]) According to Chavez, CALCRIM No. 358 is erroneous because, unlike CALJIC No. 2.71, the cautionary language is not limited to statements which tend to prove guilt. (*People v. Vega* (1990) 220 Cal.App.3d 310, 317.) Here, Chavez contends that the jury viewed his exculpatory statements - - that he believed that Padilla was armed - - with caution, and thus violated his constitutional rights. We disagree.
>
> The use notes for CALCRIM No. 358 provides that: "If the jury heard both inculpatory and exculpatory, or only inculpatory, statements attributed to the defendant, give the [cautionary] paragraph. If the jury heard only exculpatory statements by the defendant, do not give the [cautionary] paragraph." Here, the oral statements by Chavez as conveyed by Detective Rodriguez included both inculpatory and arguably exculpatory statements. In such cases, defendants would be more helped than harmed if the entire testimony was viewed with caution. Furthermore, testimony that is exculpatory in one context may be inculpatory in another context. (*People v. Vega*, *supra*, 220 Cal.App.3d at pp. 317-318.) Thus, the trial court properly gave the instruction that Detective Rodriguez's testimony about Chavez's oral statements should be viewed with caution. Chavez could have requested a modification to CALCRIM No. 358 that the cautionary language should apply only to specific statements, but did not do so. Instead, Chavez did not object to CALCRIM No. 358 as given, and also relied on it in his final argument. (RT 191-192.) As such, it is forfeited on appeal unless the error affected Chavez's substantial rights. (§ 1259.) Moreover, because CALCRIM No. 358 is a cautionary instruction that benefits the defendant, any error in giving the instruction is harmless. (*People v. Frye* (1998) 18 Cal.4th 894, 959.)

> In any event, any error was harmless because it is not reasonably probable that appellant would have achieved a more favorable result if CALCRIM no. 358 had not been given. (*People v. Dickey* (2005) 35 Cal.4th 884, 905-906.) Here, appellant relied upon the affirmative defense of self-defense such as evidence that Padilla made threatening gestures or verbal threats during the incident, or that Padilla was armed with a gun at the time of the incident. Thus, any error was harmless.

(Lodged Doc. No. 3, Opinion at 5-7.)

### 3. Analysis of Merits

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in a federal habeas corpus action. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See, id. at 72. Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See, United States v. Frady, 456 U.S. 152, 169 (1982) (*citing* Henderson v, Kibbe, 431 U.S. 145, 154 (1977)). Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993) (whether the error had a substantial and injurious effect or influence in determining the jury's verdict.). See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Id. With this standard in mind, the court will now examine Petitioner's claim.

In this instance, the appellate court properly determined that the trial court correctly instructed the jury with CALCRIM 358, as it was required to do so sua sponte under California law. Petitioner has not shown that the instruction so infected the entire trial and his conviction

8

did not violate his due process rights. The prosecutor introduced oral statements made by Petitioner to a detective which contained both exculpatory and inculpatory statements. In such circumstances, the trial court must, sua sponte, give the cautionary warning paragraph. Petitioner overlooks the fact that he made incriminating statements to the detective and the instruction therefore benefitted his defense. Petitioner initially told the detective that he was afraid the victim was armed and would shoot him, then he later changed his story, and indicated that he knew the victim was not armed when he shot him. Thus, Petitioner's exculpatory statements turned into inculpatory statements. Therefore, this instruction actually benefitted Petitioner because the jury would view his change of story and implications in the offense with caution. Even if the jury may have all viewed his initial statements with caution, the fact remains that there were inculpatory statements presented. Stated otherwise, without this instruction, the jury would not have viewed Petitioner's inculpatory statements with caution, which would have no doubt been detrimental to Petitioner.

In any event, even if the instruction was given in error, it was harmless under <u>Brecht v. Abrahamson</u>, 507 U.S. at 637. As stated by the appellate court, although Petitioner proffered a defense that he shot the victim in self-defense, there was no evidence that the victim, "made threatening gestures or verbal threats during the incident, or that [the victim] was armed with a gun at the time of the incident." Although Petitioner initially tried to claim the shooting was in self-defense, he later recanted such claim when confronted by the police officer's disbelief. The evidence supporting Petitioner's convictions for attempted murder and assault with a firearm was substantial. Petitioner was identified by the victim as the person who shot him, and the victim specifically recounted the chain of events preceding the shootings, and there was no testimony that the victim was carrying a weapon. In fact, Petitioner admitted to Detective Rodriguez that he shot the victim, not in self-defense, but because the victim was dating Petitioner's baby's mother. Accordingly, even if the jury was not given CALCRIM 358 with respect to his initial statement, there is no showing that it would have changed the outcome of the case.

D.   Ineffective Assistance of Counsel Claim

Petitioner contends that defense counsel was ineffective for failing to object to Detective Rodriguez's testimony regarding his interview of Petitioner.

1.   State Court Decision

> Appellant next claims that he was prejudiced by the admission of the testimony of Detective Rodriguez. Appellant claims that this evidence was completely inadmissible and prejudicial. In anticipation of the argument that there was no objection to the admissibility of the evidence, appellant contends that the requirement to object was waived here because making the objection would have been futile or, alternatively, the lack of an objection was the product of ineffective assistance of counsel.
>
> Detective Rodriguez was allowed to testify about his interview with Chavez, and the means by which he got Chavez to change his story (e.g., by expressing doubt about the credibility of Chavez's prior testimony and by lying that Padilla had been subject to a gunshot residue test that was negative which indicated that Padilla was unarmed). Chavez contends that the testimony was erroneous because it was lay testimony on the credibility of Chavez's testimony or on Chavez's affirmative defense of self-defense.[3]
>
> Chavez also contends that he was provided ineffective assistance of counsel. In order to prevail on a claim for ineffective assistance of counsel, Chavez must make two showings. First, he must show that counsel's representation fell below an objective standard for reasonableness under prevailing professional norms. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688; *People v. Gray* (2006) 37 Cal.4th 168, 206-207.) Second, Chavez must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been more favorable to the defendant. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 687; *People v. Kelly* (1992) 1 Cal.4th 495, 519-520.) Given that we have concluded that Detective Rodriguez's testimony on his doubts about Chavez's story was admissible, there was no ineffective assistance of counsel for failing to object to the admission of that testimony.

(Lodged Doc. No. 3, Opinion at 7-8.)

2.   Applicable Law

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S.

---

[3] We note that Chavez did not object to the testimony, and actually invited some of the testimony in his cross-examination of Detective Rodriguez. As such, the claim is forfeited. Nevertheless, we address the claim in light of Chavez's alternative arguments.

668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994). More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000). Counsel's failure to make a meritless objection to the admission of evidence does not constitute ineffective assistance. Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000), citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985).

California Evidence Code section 800 which applies to lay witness opinion testimony states:

> If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is:
>
> (a) Rationally based on the perception of the witness; and
>
> (b) Helpful to a clear understanding of his testimony.

### 3. Analysis of Merits

Petitioner has not established that an objection to this evidence would have been meritorious, or that the result of the proceedings would have been different if an objection was made. Detective Rodriguez explained to the jury that during the interview he used a ruse because he did not believe Petitioner's initial story of self-defense. Rodriguez told Petitioner untruthfully that the victim's gunshot residue test came back negative. Without the officer's state of mind as to why he used a ruse the Detective's interview tactics would not have made sense to the jury. Accordingly, the testimony was relevant and admissible "because it was rationally based upon his perception of his own state of mind and was helpful to a clear understanding of the rest of his testimony. (Evid. Code, § 800.)" (Lodged Doc. No. 3, Opinion at 8.) Accordingly, because the testimony was permissible under California law, any objection would have been futile. Therefore, counsel could not have been ineffective, nor was Petitioner prejudiced by counsel's failure to object. Petitioner's claim fails under Strickland and must be denied.

### E. Instructional Error

Petitioner contends that the instructions on reasonable doubt violated his constitutional rights because the instructions shifted the burden of proof and precluded the jury from finding reasonable doubt based on lack of evidence. Petitioner's claim was denied by the California Court of Appeal, and the California Supreme Court denied review. (Lodged Doc. Nos. 3 & 5.)

### 1. Last Reasoned State Court Decision

In denying the claim, the California Court of Appeal, held as follows:

> Finally, defendant contends that the instructions used in this case on reasonable doubt, CALCRIM No. 220 and CALCRIM No. 222, violated his constitutional rights because these instructions shifted the burden of proof and

| | |
|---|---|
| 1 | further precluded any reasonable doubts based upon a "lack of evidence." This issue has been raised and rejected numerous times, including by this Court in two separate published opinions. (*See*, e.g., *People v. Rios* (2007) 151 Cal.App.4th 1154, 1156-1157; *People v. Flores* (2007) 153 Cal.App.4th 1088, 1092.) We are not persuaded that we need to revisit the holdings in those cases here. |

(Lodged Doc. No. 3, Opinion at 8-9.)

    2.    <u>Applicable Law</u>

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>In re Winship</u>, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073 (1970). The United States Supreme Court has held that "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." <u>Victor v. Nebraska</u>, 511 U.S. 1, 5, 114 S.Ct. 1239 (1994). The <u>Victor</u> Court further held that an instruction cast in terms of an "abiding conviction" as to guilt, without reference to "moral certainty," correctly stated the state's burden of proof." <u>Id</u>. at 14-15.

    3.    <u>Analysis of Merits</u>

The jury was instructed under CALCRIM 220 that "[u]nless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty." (CT 99.) In addition, CALCRIM 222 instructed the jury that it must use only the evidence presented in the courtroom to decide the facts. (CT 100.) Contrary to Petitioner's claim, the only reasonable interpretation of these instructions is that if the evidence presented to the jury was insufficient to prove each element of the offense beyond a reasonable doubt, such lack of evidence would have been sufficient to acquit Petitioner. Accordingly, Petitioner's claim fails on the merits.

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

    1.    The instant petition for writ of habeas corpus be DENIED; and

    2.    The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:  March 10, 2010**                     /s/ Sandra M. Snyder
                                        UNITED STATES MAGISTRATE JUDGE